IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LISA ANN KABELE,

                        Plaintiff,                    OPINION AND ORDER

  v.

                                                         12 cv-776-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

---

In this *pro se* action brought pursuant to 42 U.S.C. § 405(g), plaintiff Lisa Ann Kabele seeks judicial review of an adverse decision by the Commissioner of Social Security. Specifically, Kabele seeks relief under sentence six of § 405(g), contending that the Commissioner erred by failing to consider new evidence filed after the Administrative Law Judge's decision. For the reasons that follow, the court will remand to the ALJ for further evidence gathering.

## FACTS

The following facts are drawn from the administrative record (AR).

### I.    Background

On November 25, 2009, Kabele filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability as of March 1, 2009. (AR 67, 146, 148.) After her applications were denied initially and on reconsideration, Kabele appeals and a hearing was held before an ALJ on April 26, 2011.

1

(AR 8.)  The ALJ issued his decision on May 20, 2011, finding Kabele not disabled.  (AR 59, 70.)

Kabele requested Appeals Council review of the ALJ's decision.  In her request for review, Kabele proffered additional evidence not available at the time of the hearing before the ALJ or before his adverve decision -- namely a June 9, 2011, "After Visit Summary" and a July 12, 2011, "Mental Impairment Questionnaire" completed by Claudia M. Bavlenka, LPC.  (AR 5, 670.)  The Appeals Council found that Kabele had waived her right to consideration of post-hearing evidence and denied her request for review.  (AR 1, 4.)  The Appeals Council's denial of review rendered the ALJ's decision the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.  On July 18, 2012, Kabele sought judicial review in this court pursuant to 42 U.S.C. § 405(g) and 1383(c)).

## II.    Kablele's Medical History

Kabele has a history of depressive symptoms that have been treated since 1998 with medication prescribed by her primary care physician, Dr. Timothy Deering.  (AR 396.)  Aside from brief efforts at therapy in 2000 and 2001, Kabele did not participate in therapy for depression until June 2011, after the ALJ's decision in this case.  (AR 670.) She was diagnosed with breast cancer in 2003, and underwent a lumpectomy and radiation treatments between September 2003 and March 2004.  (AR 384, 386.)

In February 2006, Kabele reported seeing a substance abuse counselor. (AR 368.) In September 2006, she first complained of chronic neck and back pain, and Dr. Deering prescribed Tylenol with codeine. (AR 367.) Kabele also began taking Zoloft. (AR 367.) In May 2007, Kabele reported continued use of Tylenol with codeine and indicated that her depressive symptoms were well-controlled with Zoloft. (AR 361.)

In October 2008, Kabele reported that Tylenol with codeine remained effective. (AR 351.) Dr. Deering again emphasized the importance of compliance and repeatedly recommended counseling. (AR 350-51.) In June 2009, at least three months past her March 1, 2009, alleged onset date, Kabele's medication compliance remained "modest" and she was "somewhat ambivalent" about a planned transition from Prozac to Celexa. (AR 336.)

A year later, Kabele's medication compliance was reported as "fair." (AR 629.) Specifically, in June 2010, Dr. Deering noted that Kabele was noncompliant with prescribed thyroid medication, because she felt it was causing her hair to fall out, and that she only intermittently took her psychiatric medication. (AR 629.)[1] In October 2010, Dr. Deering recommended increasing Kabele's antidepressant dosage or adding Wellbutrin, both of which Kabele refused. (AR 612.) Finally, in November 2010, Kabele's thyroid levels were normal (even absent maintenance medication), and she

---

[1] At that same "well-visit," Kabele complained of hip, chest, shoulder and neck pain, as well as occasional left arm numbness (AR 629), although a July 2010 hip examination at St. Clare Hospital was normal, showing no fractures, no acute malalignment, and proper joint space. (AR 657.)

reported that her headaches and neck pain generally rated a two or three out of ten. (AR 666.)

In April and May 2010, Kabele was treated by Dr. Thomas Zirkel for pain under her left big toe. (AR 653.) An x-ray showed no fracture or dislocation, only minor degenerative changes and no soft tissue abnormalities. (AR 554-72, 653.) Dr. Zirkel diagnosed sesamoiditis and recommended conservative treatment, including, wearing a boot, icing and resting the foot. (AR 555.)

### III. Medical Opinions

**A. Dr. Ludvigson**

In February 2010, a consultative psychological examiner Dr. Gary Ludvigson, Ph.D., examined Kabele, reviewed her complete medical history and issued a disability report. (AR 529, 535.) During Dr. Ludvigson's examination, Kabele complained of chronic depression and associated chronic pain in her wrist, back and hip, and reported taking Zoloft. (AR 529.)

Dr. Ludvigson described Kabele as reasonably pleasant and cooperative, and able to complete her activities of daily living independently and with reasonably good quality. (AR 533.) She reported no episodes of decompensation, nor any job accommodations having been made for her. (AR 533.) Dr. Ludvigson assigned Kabele a Global Assessment of Functioning ("GAF") Score of 50-55, indicating she fell in a range of

seriously limited to moderately functioning.[2] (AR 535.) Ludvigson opined that "with no mental health counseling," Kabele's prognosis is guarded, but "[w]ith appropriate psychotherapy if she is motivated," that "her prognosis will improve." (AR 535.) As to Kabele's work capacity, Dr. Ludvigson opined that Kabele could "likely" understand, remember and carry out simple instructions; respond appropriately to supervisors and coworkers; "maintain concentration, persistence and pace at least psychologically"; and adapt to changes. (*Id*.) He also notes that she "may have some difficulty with routine stressors because of her anxiety level."[3] (*Id.*)

### B. Dr. Eric Edelman

State agency reviewing psychiatrist Dr. Eric Edelman, Ph.D., reviewed Kabele's entire medical record, as well as Dr. Ludvigson's report. (AR 548.) In a February 16, 2010 Psychiatric Review Technique, Dr. Edelman concluded that Kabele's impairments were not severe. (*Id*.) Dr. Edelman opined that Kabele would have only mild restrictions in activities of daily living, social functioning, and mild limitations in concentration, persistence and pace. (*Id*.)

---

[2] Reflective of this GAF score, Dr. Ludvigson summarized her mood as follows: "On this date, she is constricted in affect and depressed in mood and it appears a longterm characterologically related depression in the opinion of this psychologist. She also appears to have some characterological features of dependency and avoidance as well. She presents with significant symptoms of anxiety and an anxiety disorder NOS will be provided as well." (AR 534.)

[3] In making his diagnosis, it is worth noting that Dr. Ludvigson was the only medical professional in the record who met with Kabele. The state agency psychiatrist examined Kabele's impairments on the papers.

## IV. The ALJ's Decision & Subsequent Treatment

The ALJ found that Kabele had serious impairments of affective, anxiety and personality disorders, alcohol dependence, obesity, hypertension, diabetes, thyroid disease, and migraines. Despite these serious impairments, the ALJ nevertheless found that Kabele had the RFC to perform a range of light work (as defined in 20 C.F.R. § 404.1567(b)), involving only simple, routine, repetitive tasks in a low stress job, with no production line type work. (AR 66.) The ALJ found that Kabele could was "capable of making a successful adjustment to work that exist[ed] in significant numbers in the national economy." (AR 68.)

After the ALJ's decision, from June 27, 2011 to July 11, 2011, Kabele had four counseling sessions with Claudia Bavlenka, LPC. (AR 670.) Kabele submitted treatment notes and a "Mental Impairment Questionnaire" from Bavlenka to the Appeals Council. (*Id*.) In her Questionnaire, Ms. Bavlenka assigned Kabele a GAF Score of 50, indicating seriously impaired functioning. (*Id*.) Bavlenka opined that Kabele's persistent, low-level depression would cause serious impairment in social occupational functioning, as demonstrated by her inability to keep a job. Bavlenka further found that Kabele had fair or poor "mental abilities and aptitude needed to do unskilled work" with respect to a list of capabilities. (AR 670-71, 673.) Ultimately, she concluded that Kabele had marked limitations in activities of (1) daily living, (2) social functioning, and (3) concentration persistence and pace ("CPP"). (AR 675.)

## OPINION

Ordinarily, a federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law.  42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  What makes this case different from the typical case before a district court is that plaintiff seeks remand under sentence six of 42 U.S.C. § 405(g), rather than sentence four.[4]  *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991) (recognizing two types of remand available in Social Security cases: sentence four remand or sentence six remand).  Under sentence four, the court terminates the case by either "affirming, modifying, or reversing," the Commissioner's decision.  42 U.S.C. § 405(g); *Curtis v. Shalala*, 12 F.3d 97, 101 (7th Cir. 1993).  Under sentence six, the court retains jurisdiction and remands to the ALJ for further evidence-gathering and does not "rule in any way as to the correctness of the administrative determination."  *Melkonyan*, 501 U.S. at 98.

---

[4] Sentence six of § 405(g) provides in full:

> The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

7

Because "the relief would be conflicting," a "[c]ourt cannot grant both sentence four and the sentence six remands." *Bryant v. Colvin*, No. 3:12-CV-0307-CAN, 2013 WL 6800127, at *6 (N.D. Ind. Dec. 20, 2013). This conflict was earlier recognized in *Melkonyan*, where the Supreme Court held that:

> The sixth sentence of § 405(g) . . . describes an entirely different kind of remand [than sentence four]. The district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding. The statute provides that following a sentence six remand, the Secretary must return to the district court to file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

501 U.S. at 111 (internal quotation marks omitted).

While Kabele's brief suggests she may also be seeking sentence four relief to challenge credibility findings made by the ALJ, the court finds that her request for remand under sentence six is the primary basis for relief. Indeed, it is the newly submitted evidence proffered by Claudia Bavlenka, LPC, and appended to Kabele's opening brief, that she relies upon to support her case before the original ALJ.

The Commissioner makes a facial challenge to Kabele's request for section six relief, contending that Kabele's failure to refer to sentence six in her motion for summary judgment in this court amount to a waiver of her right to have the newly admitted evidence reviewed by the original ALJ. *See Burke v. Astrue*, 306 F. App'x 312, 316 (7th

Cir. 2009) ("Burke failed to move for remand on the basis of new evidence under sentence six of 42 U.S.C. § 405(g) in the district court and as a result waived the right to request such relief before this court."). The court rejects the Commissioner's contention for at least three reasons.

*First*, the claimant in *Burke* was represented by counsel, while Kabele is *pro se*. *Pro se* submissions are "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 521 (1972)(in addressing any *pro se* litigant's pleadings, the court must construe the allegations generously and hold the complaint "to less stringent standards than formal pleadings drafted by lawyers."). This case is no exception. Indeed, it would be remiss to treat Kabele's opening/reply briefing as anything but seeking sentence six relief. For instance, Kabele's opening brief states that she is seeking that new evidence be considered by the Commissioner together with the original evidence in the record. (Dkt # 11 at 1.) The fact that she appends the newly submitted evidence to her brief is telling of her request. If not already, the request is crystallized in her reply brief: "Basically I am writing to hereby ask this case be remanded under sentence six of 42 U.S.C. 405(g) for further consideration of new evidence." (Dkt # 16 at 1.) To ignore these pleadings would be a classic case of trumping form over substance. Based on a liberal construction of Kabele's briefing, the court rejects the Commissioner's position. *See Erickson*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. at 106 (1976)); FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

9

*Second*, *Burke* provides no real guidance for present purposes, particularly when the decision is non-precedential. In particular, while *Burke* apparently failed altogether to seek remand under sentence six before the district court, Kabele made the request in her reply, if not opening brief, before this court.

*Third*, Kabele's position is fortified by the recent decision in *Bryant*, 2013 WL 6800127. There, the court was presented with a plaintiff seeking both sentence four and sentence six relief. The Commissioner challenged the plaintiff's right to sentence six relief because he failed to make the request in his opening papers, thereby waiving his right to do so. In rejecting that argument, the court found that because the Commissioner had brought the sentence six remand to the court's attention in response briefing, and because the plaintiff sought an express request for sentence six relief in reply briefing, the court considered the request. *Id.* at *6-7. The facts in this case bear a striking resemblance to the instant, supporting Kabele's position. If anything Kabele's request is even more deserving, given that she is acting *pro se*.

Having established that it is proper to consider Kabele's requested relief, the question remains whether Kabele's newly submitted evidence supports a sentence six remand under 42 U.S.C. § 405(g). The court finds that it does.

Kabele contends that the proposed evidence from Bavlenka is new and material. For sentence six purposes, "new" means evidence "not in existence or available to the claimant at the time of the administrative proceeding." *Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir. 1988) (quoting *Godsey v. Bowen*, 832 F.2d 443, 444 (7th Cir. 1987)).

"Material" means that there is a "reasonable probability" that the Commissioner would have reached a different conclusion had the evidence been considered. *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir.1997) (citing *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir.1993). The new evidence is, however, only material if it "is relevant to the claimant's condition" during the time that the claimant's disability application was under the ALJ's review. *Schmidt*, 395 F.3d at 742 (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir.1990)).

Kabele's newly submitted evidence meets all of the criteria necessary for a sentence six remand. *First*, the evidence from Bavlenka was "new" because it was not available until *after* the ALJ's decision, May 20, 2011. For the same reason, Kabele had good cause for not presenting the evidence earlier because Ms. Bavlenka only completed the Questionnaire after the ALJ decision issued (*i.e.*, following the ALJ's decision, Kabele met with Ms. Bavlenka on four occasions with the Mental Impairment Questionnaire being prepared on July 12, 2011). Absent some evidence of an orchestrated delay by Bavlenka, which is not present here, this is enough to satisfy the "new" criteria.

*Second*, the court finds the evidence material. To be material, the claimant must "show that there is a reasonable possibility that the ALJ would have reached a different conclusion had the evidence been considered." *Willis v. Apfel*, 116 F. Supp. 2d 971, 976 (N.D. Ill. 2000) (citing *Sears v. Bowen*, 840 F.2d 394, 399-400 (7th Cir. 1988)).[5] Here,

---

[5] In *Willis*, the court found that new evidence of knee surgeries provided a reasonable possibility that the ALJ would reach a different outcome. In arriving at this conclusion, the court emphasized that the ALJ had previously discredited much of the claimant's subjective evaluations

Ms. Bavlenka is a licensed professional counselor. While she is not a practicing psychiatrist, her evidence still holds value in the disability context. The Commissioner's own Social Security Rulings suggest as much. Under SSR 06-03p in particular, the Commissioner held that medical sources such as "nurse practitioners, physician assistants, and licensed clinical social workers . . . should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* In light of this directive, the court has little hesitation in finding that Ms. Bavlenka's evidence -- which after all addresses Kabele's mental impairments -- may have some bearing on the ALJ's decision on remand. Specifically, at Step Four, the ALJ originally found that Kabele "has moderate difficulties with concentration, persistence and pace, but she has retained good mental ability" (AR 68), but then afforded little weight to the severity of Kabele's mental impairments. Ms. Bavlenka's evidence may, therefore, not only bolster Kabele's credibility, but as SSR 06-03p explains, her evidence should be evaluated on key issues such as impairment severity and functional effects."[6]

---

of pain, as well as a physician's residual functional capacity evaluation, based on a lack of objective evidence. *See Willis*, 116 F. Supp.2d at 976.

[6] In particular, Ms. Bavlenka's questionnaire may well assist the ALJ on remand in better determining Kabele's CPP limitations. As the Commissioner is well aware, moderate limitations in CPP must be properly accommodated for in the Residual Functional Capacity ("RFC") determination. *See, generally, Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014)(rejecting Commissioner's argument that the ALJ's failure to mention the five CPP limitations that the state agency psychologist found moderate limitations for, was remedied by translating these limitations into "unskilled" work.). Evidence going to these impairments is critical at the Step Three listing phase, as well as Steps Four (RFC) and Five (vocational expert testimony). While the merits of the issues are not addressed in this opinion, a failure to properly accommodate for such limitations in the RFC warrants remand and reversal in a sentence four case. *See generally O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

While Bavlenka's Mental Impairment Questionnaire includes check-the-box assessments, it is six pages in length and provides details as to Kabele's abilities to undertake work because of mental impairments.  (AR 674.)  Among other things, Bavlenka states that Kabele "lacks the mental/emotional/physical stamina to maintain [job] duties" and assigns her a GAF score of 50.  *Id.* at 670.  While this score is only five points fewer than Dr. Ludvigson's score, it lowers her range of impairment into the severe category.  Finally, the Questionnaire also assigns to Kabele marked limitations in activities of (1) daily living, (2) social functioning, and (3) concentration persistence and pace.  (AR 675.)  As such, there is more than enough evidence in the report (if considered and credited) to find a "reasonable probability" that the Commissioner would have reached a different conclusion in this case.  Indeed, this holding is analogous to that in *Lemmens v. Astrue*, No. 06-C-473-C, 2007 WL 5618985, at *3 (W.D. Wis. May 3, 2007), which found evidence was material because the report "offered limitations for plaintiff that are incompatible with even unskilled employment, including the inability to perform even low stress jobs and a high rate of absenteeism."

In issuance of this opinion, the court does not, however, intend to suggest the result that should be reached on remand.  Rather, the court encourages the parties and the ALJ to consider the evidence and issues anew because even upon crediting the newly submitted evidence and incorporating any limitations into his RFC formulation, the VE may opine and the ALJ may find that there is still substantial evidence in the record

supporting his original decision. This analysis is left to the province of the ALJ upon remand as mandated under sentence of 42 U.S.C. § 405(g).

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying Kabele Lisa Kabele's application for disability benefits is **REMANDED** under **sentence six** of 42 U.S.C. § 405(g) **for further evidentiary gathering** consistent with this opinion.

Because the remand is ordered pursuant to sentence six of 42 U.S.C. § 405(g), the Clerk of the Court is DIRECTED to close this case, but **NOT** to enter judgment for Kabele.[7] Instead, the case is to be administratively closed and reopened, if necessary, after the ALJ's review of the newly admitted evidence. The Commissioner is also DIRECTED to provide a status report quarterly as to whether the ALJ has made a decision on benefits.

Entered this 27th day of March, 2015.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

---

[7] Since a remand under sentence six does not affirm, modify or reverse the Commissioner's decision, the court maintains jurisdiction over this case until the newly admitted evidence has been considered by the ALJ. As the Supreme Court has made clear in the sentence six context, "the Secretary must return to the district court to file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).